FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 19, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　-vs-<br><br>JAMES RUSSELL BRADBURY,<br><br>　　　　　Defendant. | No.　2:15-CR-0039-WFN-1<br><br>ORDER DENYING MOTION FOR REDUCED SENTENCE |

Pending before the Court is Defendant's Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 63. Defendant argues there are extraordinary and compelling reasons to reduce her sentence of imprisonment to time served because the Bureau of Prisons [BOP] cannot help her with her gender transition or other medical issues. *Id*. The Court denies the Motion because Defendant has not shown extraordinary and compelling reasons to reduce her sentence, and because the § 3553(a) factors weigh against release.

## I. Factual and Procedural Background

In 1989, Defendant was convicted of Lewd Acts Upon a Child and Child Molestation in violation of California law. Defendant masturbated one foot away from her eighteen-month-old daughter's face, while her daughter was naked from the waist down. Defendant had also molested three other children between the ages of four and six, all of whom were the daughters of friends and neighbors. Defendant was sentenced to six years imprisonment, but was released on parole three years later.

Defendant absconded from parole in 1993 and remained at large in the community for over a decade until her arrest in 2004.

On March 4, 2004, Defendant was arrested for trying to use a false identity to enter the United States. A search of Defendant's car revealed that she had girls' underwear, a lock

ORDER - 1

of human hair, many children's toys, a camera, film, and a laptop. The laptop contained several movies—and hundreds of images—of sexual abuse committed against children, many of whom were less than twelve years old. The movies included, for example, footage of an adult male raping a girl who was three-to-six years old. For this conduct, Defendant was convicted of Possession of Visual Depictions of Minors Engaged in Sexually Explicit Conduct and Willfully Making a False Statement, on March 4, 2005. She was sentenced to ten years imprisonment and five years of supervised release.

Defendant was released from prison again on April 5, 2013. A year and a half later, she absconded from supervised release. Defendant's then-wife reported that she had not seen Defendant for about a day and that Defendant had a new cell phone. Defendant's probation officer searched the phone and found around 60 images of child pornography, including, for example, images of an adult male assaulting a girl who was around one-to-two years old.

Defendant was eventually arrested in Newport, Washington, on February 12, 2015. During the arrest, law enforcement officers found another cell phone in Defendant's possession. This phone had more than twenty images of sexual abuse committed against prepubescent girls. In addition to the images of actual abuse were several cartoon depictions of sexual abuse against school-age girls, toddlers, and infants. For this conduct Defendant was convicted of Possession of Child Pornography and Failure to Register as a Sex Offender on September 4, 2015. She was sentenced to fifteen years of imprisonment followed by supervised release for life.

Defendant now asks the Court to reduce her sentence to time served, citing the need for "resources to help Ms. Bradbury in her gender transition and other medical issues." ECF No. 63 at 1.

## II. Legal Standards

Defendant moves for a reduction of her sentence under 18 U.S.C. § 3582(c)(1)(A), often called compassionate release. The Court may reduce a sentence under 18 U.S.C. § 3582(c)(1)(A) if (1) there are "extraordinary and compelling reasons" to do so, and (2) the reduction is appropriate considering the factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C.

ORDER - 2

§ 3582(c)(1)(A); *United States v. Wright*, 46 F.4th 938, 945 (9th Cir. 2022).[1] Prisoners must satisfy both conditions to obtain compassionate release. *Wright*, 46 F.4th at 945. If either condition is not met, compassionate release must be denied. *Id.*[2]

Before moving for compassionate release, a prisoner must first exhaust their administrative remedies by asking the BOP to move for compassionate release on their behalf. § 3582(c)(1)(A); *United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021). Once thirty days have lapsed from the warden's receipt of the prisoner's request, the prisoner has exhausted their administrative remedies. *Keller*, 2 F.4th at 1281. Even if the Court denies a motion for compassionate release on other grounds, it must address exhaustion if the Government properly raises the issue. *Id.*

**III. Analysis**

The Motion is denied because Defendant has not established extraordinary and compelling reasons to reduce her sentence. The Motion is also denied because reduction of Defendant's sentence is inappropriate in light of the factors set forth in § 3553(a).

---

[1] Defendants may also qualify for compassionate release if they are at least 70 years old, have served at least 30 years of their sentence, the Director of the BOP has determined they are not a danger to any person or the community, and the § 3553(a) factors weigh in favor of reduction. 18 U.S.C. § 3582(c)(1)(A). Because Defendant is less than 70 years old, this route is unavailable, and Defendant must demonstrate extraordinary and compelling reasons for reducing her sentence. *See id.*

[2] "Any reduction must [also] be consistent with applicable policy statements issued by the Sentencing Commission." *Dillon v. United States*, 560 U.S. 817, 821 (2010). However, because the Sentencing Commission has not amended the Sentencing Guidelines since Congress amended 18 U.S.C. § 3582(c)(1)(A) to allow prisoners to petition for compassionate release directly, there *are no* applicable policy statements issued by the Sentencing Commission. *See United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021).

ORDER - 3

**A. Defendant has exhausted her administrative remedies.**

Defendant exhausted her administrative remedies by submitting her request for compassionate release to the warden more than thirty days before filing the instant Motion.

The Government argues that a compassionate release petitioner cannot raise grounds for relief before the Court that were not first presented to the BOP. ECF No. 68 at 5. According to the Government, Defendant did not raise the adequacy of her mental health care in her petition to the BOP. *Id.* Therefore, the Government argues, the Court cannot consider that issue now. *Id.*

The Court disagrees. In her August 12, 2021 request for compassionate release, Defendant wrote that "there is no set program in the BOP for dealing with [i]ntersex individuals. Psychology is also aware of this deficiency, as it exists in the[ir] information also." ECF No. 63-4 at 5. The argument Defendant presented to the BOP is similar enough to the argument Defendant presents now: she does not receive adequate individualized mental health care from the BOP. *Cf. United States v. Gorion*, No. CR 15-00519, 2022 WL 867764, at *3 (D. Haw. Mar. 23, 2022). Therefore, the Court will consider it. *Cf. id.*

**B. The Motion is denied because Defendant has not shown extraordinary and compelling reasons to reduce her sentence.**

Defendant offers three grounds for reducing her sentence: her gender transition, her health problems, and her other mental health needs. This order will now address these grounds in turn. They are not extraordinary and compelling reasons to reduce Defendant's sentence.

### 1. Defendant's Gender Transition

Defendant argues her gender transition is an extraordinary and compelling reason to reduce her sentence because she needs individualized counseling and gender-affirming surgery. ECF No. 63 at 2, 6–7. The parties have not pointed to any authority addressing whether an inmate's gender transition can be an extraordinary and compelling reason for a sentence reduction. Nor has the Court found any. Assuming a gender transition could be an

ORDER - 4

extraordinary and compelling reason for a sentence reduction in some circumstances, the Court finds it is not in this case.

Defendant argues she needs gender-affirming surgery. *Id.* at 7. She claims she requested the procedure every year from 2018 to 2021, but has not yet received it. *Id.* The BOP now has a process for inmates to request gender-affirming surgery. ECF No. 68-2 at 10. Inmates must submit their request to their warden, who will then forward the request to the Transgender Executive Council. *Id.* The Council has exclusive authority to determine the inmate's request. *Id.* Defendant provides no indication that she has attempted to use the BOP's process for requesting gender-affirming surgery, much less that the BOP has improperly denied such a request. *See* ECF No. 63. It appears from the record that Defendant has only expressed interest to medical staff who have no authority to act on requests for gender-affirming surgery. *See* ECF No. 68-1 at 57–58, 92–96. The Government raised this issue in response to the Motion, ECF No. 68 at 12, but Defendant did not address it in her reply, *see* ECF No. 69. The Court therefore concludes that Defendant has not presented a proper request to the BOP for gender-affirming surgery.

Additionally, Defendant has not explained how she would obtain gender-affirming surgery outside of prison. *See* ECF No. 63. Defendant states that the VA will provide her medical care once she is out of prison, *id.* at 4, but the VA does not fund or provide gender-affirming surgery, ECF No. 68-3 at 8. The Government raised this issue in its response to the Motion, ECF No. 68 at 12, but Defendant did not address it in her reply, *see* ECF No. 69. The Court therefore concludes that Defendant has no plan to obtain gender-affirming surgery once she is released from prison.

Defendant also argues that "no individualized psychotherapy [i]s afforded to her to address her needs as a transgendered person." ECF No. 63 at 3. She states that transgender individuals generally need individualized mental health counseling. *Id.* at 3–4. Defendant's generalized statements are not enough to reduce her sentence. *See Fuller*, 461 F. Supp. 3d at 1053. Besides, the record shows that the BOP has consistently provided Defendant with mental health counseling, including individualized treatment to address her needs as a

ORDER - 5

transgendered person. *See* ECF No. 68-4 at 14. And multiple psychologists with the BOP have determined Defendant would benefit from group counseling. *Id.* at 2. Defendant has been told repeatedly how to request additional mental health services, but apparently has not done so. *Id.* at 2–3. There is no record of Defendant requesting any mental health services that were then denied. *See* ECF No. 63.

Defendant's gender transition is not an extraordinary and compelling reason to reduce her sentence of imprisonment.[3]

### 2. Defendant's Health Problems

Defendant asserts a list of health problems—heart attacks, hypertension, cholesterol, angina, seizures, asthma, neuropathy, chronic pain, sleep apnea, pulmonary disease, cellulitis, compressed discs, anxiety, and bipolar disorder—but does not explain why these maladies are extraordinary and compelling reasons to reduce her prison sentence. *See* ECF No. 63 at 4, 7. Although some of these problems are reflected in Defendant's medical file, Defendant has not argued, much less shown, that the BOP has been unable or unwilling to treat them. To the contrary, it appears from the record that the BOP has thoroughly attended to Defendant's medical needs. *See* ECF No. 67. Nor does Defendant attempt to explain how her medical care would be different outside of prison. *See* ECF No. 63. Defendant's generalized complaints of health problems are not extraordinary and compelling reasons to reduce her sentence. *See United States v. Fuller*, 461 F. Supp. 3d 1046, 1053 (W.D. Wash. 2020) (concluding generalized assertions of health problems were not extraordinary and compelling reasons); *cf. United States v. Wills*, 541 F. Supp. 3d 1185, 1189–90 (D. Or. 2021)

---

[3] Defendant also writes that she previously suffered sexual abuse while incarcerated in California, ECF No. 63 at 2, and that transgender individuals have a greater risk of being the victims of violence, *id.* at 6–7. But Defendant has not been sexually assaulted at her current facility, and reports that she is not currently at risk of such an assault. ECF No. 68-4 at 7.

ORDER - 6

(determining health problems like Bradbury's were not extraordinary and compelling reasons and collecting cases).

Notably, Defendant specifically claims she has had four heart attacks since July 28, 2021. ECF No. 63 at 4. Her medical records, however, do not corroborate that claim. *See* ECF No. 67. Medical staff examined Defendant on July 29, 2021, after she complained of chest pains. *Id.* at 262. The examination included an electrocardiogram. *Id.* Defendant reported at that time that she was no longer suffering from chest pain, shortness of breath, or difficulty breathing, and the results of the examination were "unremarkable." *Id.* There is no record of Defendant having four heart attacks after that consultation. *See* ECF No. 67. Even if Defendant has had four heart attacks, there is no indication her heart condition would be treated differently outside of prison. Therefore, Defendant's heart problems are not an extraordinary and compelling reason to reduce her sentence. *Cf. United States v. Grummer*, 519 F. Supp. 3d 760, 761 (S.D. Cal. 2021) (determining chronic heart disease, recent heart attack, hypertension, and asthma were not extraordinary and compelling reasons to reduce sentence).

Defendant's previous COVID-19 infection does not change this result. Defendant tested positive for COVID-19 on July 15, 2020. ECF No. 63 at 4. However, the record reflects that Defendant's symptoms were not severe and did not require hospitalization. ECF No. 67 at 26. Defendant does not explain why the existence of COVID-19 is an extraordinary and compelling reason for her release, *see* ECF No. 63, and the mere possibility of COVID-19 infection, without more, is not reason to reduce a prisoner's sentence, *Fuller*, 461 F. Supp. 3d at 1053. Moreover, since Defendant's infection in 2020, she has received two doses of the Moderna COVID-19 vaccine and refused a booster. ECF No. 67 at 370. Because Defendant has been vaccinated, her risk of serious infection has been reduced significantly. *See United States v. Baeza-Vargas*, 532 F. Supp. 3d 840, 845 (D. Ariz. 2021). Similarly, Defendant's refusal of the booster shot undercuts her argument. *See id.* at 843–44. If Defendant is truly worried about COVID-19, she could accept the approved booster. *See id.*

ORDER - 7

Although Defendant asserts her various health concerns as grounds for early release in the Motion, she does not address them in her reply and concedes that the true basis for her Motion is the argument "that the BOP has not done enough for her gender transition." ECF No. 69 at 2.

### 3. Defendant's Other Mental Health Needs

Defendant also argues that she needs individualized mental health treatment because she endured significant sexual abuse during previous terms of incarceration. ECF No. 63 at 2–3. But Defendant *has* received individual mental health counseling for the trauma caused by her sexual abuse. ECF No. 68-4 at 16; *see also* ECF No. 68-4 at 3, 6–7. And although Defendant may be more comfortable undergoing individualized therapy, her psychologists have concluded that group therapy is appropriate for treating her trauma. *Id.* at 2.

Similarly, Defendant writes that the BOP has refused to allow her to participate in the Sex Offender Treatment Program [SOTP]. ECF No. 63 at 4. But according to Defendant's own expert affiant, inmates are not placed into the SOTP until they are thirty-six months away from release. ECF No. 63-2 at 15. Defendant was not placed in the SOTP because her release date is more than thirty-six months away. *See id.* There is no indication that Defendant will not be allowed to participate in the SOTP once she becomes eligible. *See id.* The Court will not substitute its own judgment for the BOP's as to when it is most beneficial for inmates to begin the SOTP.

Because Defendant has not shown extraordinary and compelling reasons to reduce her sentence, the Motion is denied.

**C. The Motion is also denied because the § 3553(a) factors weigh strongly against Defendant's early release.**

Considering Defendant's history and characteristics and the nature and circumstances of her offense, the full sentence is needed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. Defendant is serving a fifteen-year sentence of imprisonment for Possession of Child Pornography and Failure to Register as a Sex Offender. Defendant possessed dozens of images of sexual abuse against children,

including toddlers. Not only were Defendant's crimes particularly heinous, but she also committed them while she was a fugitive, having absconded from supervised release. And this is not Defendant's first time committing crimes of this nature. This is Defendant's third conviction for sexual crimes against children, and her second time fleeing from post-incarceration supervision. Therefore, the entire sentence is necessary to reflect the seriousness of Defendant's crimes, to promote respect for the law, and to provide Defendant with just punishment.

The full sentence is necessary to protect the public from Defendant's further crimes for the same reasons. Defendant has been sexually victimizing small children throughout her life. She now argues she is unlikely to recidivate because she is sixty-two years old and has had only minor infractions while serving her most recent sentence. ECF No. 63 at 8. The Court is not convinced.

Defendant's recent behavior while incarcerated is concerning. Defendant was sanctioned for possessing prohibited adult pornography in 2018. ECF No. 63-3 at 3. And, *as recently as September 2021*, Defendant had a letter in her cell with detailed depictions of sexual fantasies about small children. Therefore, Defendant's record while incarcerated does not indicate Defendant is safe to release into the community.

Nor does Defendant's age ensure she will not recidivate. Defendant argues she is unlikely to commit further crimes because prisoners her age, sixty-two, have a recidivism rate of only about 13.4%. ECF No. 63 at 8. Defendant's argument is unconvincing. Even if there is only a 13.4% chance that Defendant reoffends, that risk is too great: a 13.4% chance of Defendant sexually victimizing children is unacceptable.[4] Besides, these numbers

---

[4] Although Defendant is only sixty-two, she cites the recidivism rate for prisoners sixty-five and older. *See* U.S. Sentencing Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* at 30, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf (Dec. 2017) (last

ORDER - 9

describe populations in general. They do not describe Defendant in particular. Defendant has been committing sexual crimes against children her entire adult life, most recently in 2015—just a month shy of her fifty-fifth birthday. Statistically, fifty-five-year-old women may be very unlikely to commit crimes. But Defendant defies the odds. She has repeatedly demonstrated she is too dangerous to be released into the community.

Because the § 3553(a) factors weigh strongly against Defendant's early release, the Motion is denied. Accordingly,

**IT IS ORDERED** that Defendant's Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A), filed June 7, 2022, **ECF No. 63**, is **DENIED**.

The District Court Executive is directed to file this Order and provide copies to *pro se* Defendant, **AND TO** counsel.

**DATED** this 19th day of October, 2022.

10-11-22

                                    WM. FREMMING NIELSEN
                                    SENIOR UNITED STATES DISTRICT JUDGE

---

visited October 11, 2022). The recidivism rate for prisoners in Defendant's age group is actually 16.0%. *See id.*

ORDER - 10